UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY MONTEGNA<br><br>Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>Defendant. | Case No.: 17-CV-00939-AJB-BLM<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANT'S MOTION TO STAY; AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>(Doc. Nos. 12, 26) |

Presently before the Court is Ocwen Loan Servicing, LLC's ("Defendant") motion to dismiss Gregory Montegna's ("Plaintiff") first amended complaint ("FAC"), and its motion to stay. (Doc. Nos. 12, 26.) With regards to Defendant's motion to dismiss, Plaintiff filed an opposition on August 14, 2017. (Doc. No. 28.) As for Defendant's motion to stay, Plaintiff opposed the motion on July 17, 2017. (Doc. No. 17.) Having reviewed the parties' arguments and controlling legal authority, and pursuant to Local Civil Rule 7.1.d.1, the Court finds the matters suitable for decision on the papers and without oral argument.

Accordingly, the motion hearing set for October 26, 2017, is **VACATED**. For the reasons set forth below, the Court **DENIES** Defendant's motion to stay and **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss Plaintiff's FAC.

# **BACKGROUND**[1]

Plaintiff is a natural person from whom Defendant, a debt collector, sought to collect a consumer debt, specifically a financial obligation related to a mortgage for Plaintiff's primary residence. (Doc. No. 18 ¶¶ 19, 22.) Between December 17, 2013 through June 18, 2016, Defendant allegedly called Plaintiff on his cellular telephone using an "automatic telephone dialing system" ("ATDS"). (*Id*. ¶ 24.) An ATDS is technology which randomly or sequentially generates telephone numbers, and which also has the capacity to store or produce telephone numbers to be called. (*Id*. ¶ 25.) In addition to the use of an ATDS, Defendant allegedly would also contact Plaintiff using an "artificial or prerecorded voice." (*Id.* ¶ 24.)

The calls were frequent. For example, Plaintiff argues that he received at least ten calls for three consecutive days in June 2015. (*Id.* ¶ 29.) In total, Plaintiff states that he has received at least 234 calls from Defendant on his cellular telephone. (*Id.* ¶ 28.) When Plaintiff would answer the calls from Defendant, there would often be a silence, sometimes accompanied with a click or a beep-tone, before a representative of Defendant would pick up and start speaking. (*Id.* ¶ 26.) Occasionally, Plaintiff would even receive calls from Defendant in which the caller was a recorded voice or message, rather than a live representative. (*Id.* ¶ 27.) Plaintiff answered several of the telephone calls from Defendant and firmly requested Defendant stop calling. (*Id.* ¶ 33.) Despite this clear and unequivocal plea for Defendant to stop calling, the calls continued without interruption. (*Id.*) Plaintiff

---

[1] The following facts are taken from the FAC and construed as true for the limited purpose of resolving the motion to dismiss. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

alleges that he did not provide express consent to Defendant to receive calls on his cellular telephone, and that he revoked any type of prior express consent, if prior express consent ever existed, by stating that Plaintiff no longer wished to be contacted by phone. (*Id.* ¶¶ 30–31.) As a result of the constant calls to Plaintiff's phone, Plaintiff began to ignore or send to voicemail many incoming calls from unknown numbers. (*Id.* ¶ 41.) In doing so, Plaintiff missed important communications from friends and family. (*Id.*)

Plaintiff filed his complaint on May 8, 2017. (Doc. No. 1.) On June 30, 2017, Defendant filed its initial motion to dismiss. (Doc. No. 11.) Instead of filing an opposition to this motion to dismiss, on July 17, 2017, Plaintiff filed an amended complaint. (Doc. No. 18.) Consequently, the Court found Defendant's motion to dismiss moot. (Doc. No. 19.) On June 30, 2017, Defendant filed its motion to stay, (Doc. No. 12), and on July 31, 2017, it filed its second motion to dismiss, (Doc. No. 26). This order follows.

## **LEGAL STANDARDS**

### I. Motion to Stay

A court's power to stay proceedings is incidental to the inherent power to control the disposition of its cases in the interests of efficiency and fairness to the court, counsel, and litigants. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052, 1057 (S.D. Cal. 2007). A stay may be granted pending the outcome of other legal proceedings related to the case in the interests of judicial economy. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979). Discretion to stay a case is appropriately exercised when the resolution of another matter will have a direct impact on the issues before the court, thereby substantially simplifying the issues presented. *See Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983).

In determining whether a stay is appropriate, a district court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. These competing interests include the possible damage resulting from granting a stay, the "hardship or inequity which a party may suffer in being required to go forward[,]" and the "simplifying

or complicating of issues, proof, and questions of law" that could result from a stay. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). "If there is even a fair possibility that the stay . . . will work damage to someone else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citation and internal quotation marks omitted). "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864.

## II. Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Legal conclusions need not be taken as true "merely because they are cast in the form of factual allegations." *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). Courts generally do not look beyond the complaint for additional facts when deciding a Rule 12(b)(6) motion. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

///

///

# DISCUSSION

## I. Plaintiff's Request for Judicial Notice

As a threshold matter, the Court first turns to Plaintiff's request that the Court judicially notice Exhibit A to the Declaration of Veronica Knight. (Doc. No. 17-1 at 2.) Exhibit A is a minute entry from the court in the matter *Saul Verdin v. Ocwen Loan Servicing, LLC*, Case No. 1:17-cv-3483, ECF No. 19, entered on July 15, 2017, in the Northern District of Illinois. (Doc. No. 17-2 at 2.)

Federal Rule of Evidence 201 states that a court may judicially notice a fact that "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned."

Here, the Court finds judicial notice of the minute entry appropriate as it is a document that is not subject to reasonable dispute as it can be verified by looking at the docket. Additionally, Defendant has not opposed Plaintiff's request or disputed the authenticity of these documents. Most importantly, courts routinely grant judicial notice to court records and documents. *See Johnson & Johnson v. Superior Court*, 192 Cal. App. 4th 757, 768 (2011); *see also Shalaby v. Bernzomatic*, 281 F.R.D. 565, 570 (S.D. Cal. 2012) (granting judicial notice of records related to a state court action and a subsequent appeal). However, the Court only takes judicial notice of the existence of the minute entry and not of the truth of the decision or statements. *Johnson & Johnson*, 192 Cal. App. 4th at 768. Accordingly, Plaintiff's request for judicial notice is **GRANTED** for the limited purpose stated above.

## II. Motion to Stay

Before ruling on the substantive issues of whether Plaintiff's FAC should be dismissed, the Court will first address Defendant's motion to stay the proceedings pending ruling by the D.C. Circuit in the matter *ACA Int'l v. Fed. Commc'ns Comm'n*, Case No. 15–1211 (D.C. Cir. July 10, 2015) ("*ACA International*"). (Doc. No. 12-1.)

In 2015, the Federal Communications Commission ("FCC") issued a ruling interpreting various provisions of the TCPA. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015). This ruling is now under review by the D.C. Circuit in *ACA International*. As relevant here, the D.C. Circuit is addressing whether the FCC properly defined an ATDS as equipment having not only the *present* capacity to dial telephone numbers sequentially or randomly, but also the *potential* capacity to do so. *See id.* The D.C. Circuit will also be ruling on the issue of how a consumer who has previously given consent to cellphone calls may later effectively revoke that consent. *See id.* The D.C. Circuit heard oral argument in the case on October 19, 2016. A ruling has yet been issued.

Here, the crux of Defendant's argument supporting a stay is that the *ACA International* decision will significantly impact what type of telephone dialing equipment constitutes an ATDS, and also what methods are appropriate for a called party to revoke consent. (Doc. No. 12-1 at 6–7.) Defendant claims the ruling will directly affect whether it even utilized an ATDS and whether Plaintiff successfully withdrew consent. (*See id.* at 7.) Therefore, Defendant contends that a stay is necessary because the *ACA International* ruling could either narrow or extinguish the claims in the instant matter. (*See id.*) In opposition, Plaintiff asserts that a motion to stay would cause him prejudice, delay discovery, and that Defendant's burden of producing discovery will remain the same with or without a stay. (Doc. No. 17 at 6.)

Upon review of the parties' positions in support and in opposition of a stay, the Court ultimately holds that a stay is inappropriate. Given the circumstances, Defendant has not demonstrated this instance as one of the "rare circumstances" where a court may compel a party in one case "to stand aside" while a litigant in another settles the rule of law that *could* define the rights of both. *See Landis,* 299 U.S. at 255.

///

///

///

### a. A Balancing of Competing Interests Indicates that a Stay is Inappropriate

In a court's discretion to determine whether a stay is appropriate, a court must weigh the competing interests of the various parties that may be affected by a decision to grant or refuse to grant a stay. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). Specifically, the court must consider (1) the hardship or inequity a party may suffer in being required to go forward with the case if the request for a stay is denied; (2) the orderly course of justice measured in terms of the simplification or complication of issues, proof, and questions of law which could be expected to result from a stay; and (3) the possible damage or harm which may result from granting a stay. *See id.* The Court will analyze each of these three factors in turn.

### i. Defendant Has Not Proved Hardship or Inequity

The Court finds that Defendant fails to "make out a clear case of hardship or inequity" if required to move forward with the matter. *Landis*, 299 U.S. at 255.

Defendant mounts the argument that granting a stay will spare the parties from potentially "re-doing discovery already completed before the D.C. Circuit's decision." (Doc. No. 12-1 at 12.) This reason, standing alone, does not state an adequately compelling basis to justify a stay. Courts have held that requiring both parties to engage in conduct they would unavoidably have to in any event does not warrant an imposition of a delay that would cause a matter to come to a grinding halt. *See Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."); *see also Edwards v. Oportun, Inc.*, 193 F. Supp. 3d 1096, 1100–02 (N.D. Cal. 2016); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) ("Although [Defendant] may suffer hardship, in the form of additional discovery, the Court concludes that this potential hardship does not merit a stay in this case."); *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2015 WL 1223658, at *4 (N.D. Cal. Mar. 17, 2015) (stating the defendant would suffer no specific hardship other than "the typical costs of litigation should this case

proceed in conjunction with the pendency" of another proceeding). Therefore, without indication of additional difficulty, Defendant cannot demonstrate an inequitable hardship or extraordinary challenge in moving forward with this litigation and proceeding with routine discovery and motion practice. Moreover, because the Court also denies Defendant's motion to dismiss Plaintiff's TCPA and Rosenthal Act claims, *supra* pp. 15–17, Defendant will not be able to evade inevitable discovery and motion practice given that there will be unresolved issues in need of discovery regardless of the outcome of *ACA International*. Accordingly, it is evident the factor of "hardship or inequity" weighs against Defendant in the determination of whether a stay is proper.

### ii. The Imposition of a Stay Will Not Further the Goals of Judicial Efficiency

Next, the Court analyzes whether the consideration of judicial economy weighs in favor of granting a stay. For two reasons, this Court concludes that allowing a stay in this case will not lead to increased judicial efficiency.

First, the grant of a stay would not necessarily result in the conservation of the Court's resources. Defendant states that the D.C. Circuit's decision in *ACA International* may either limit the issues in this case or completely eliminate them. (Doc. No. 12-1 at 13.) However, Plaintiff brings two independent grounds for TCPA liability—first, Plaintiff contends that Defendant employed an ATDS to contact Plaintiff, and second, Defendant allegedly used a prerecorded voice in calling Plaintiff. (Doc. No. 18 ¶ 24.) While *ACA International* will address what technology constitutes an ATDS, the pending appeal will not discuss the issue of prerecorded voice technology. Thus, regardless of the result of the appeal, Defendant must, at the very bare minimum, still produce discovery to settle factual disputes regarding its prerecorded voice technology. *See Mendez v. Optio Sols., LLC*, 239 F. Supp. 3d 1229, 1234 (S.D. Cal. 2017) (affirming that "[e]ven if the outcome [of *ACA International*] was relevant to these proceedings and favorable to the Defendant, other issues would remain ripe for consideration, discovery, and resolution."); *see also Glick v. Performant Fin. Corp.*, No. 16-CV-05461-JST, 2017 WL 786293, at *2 (N.D. Cal. Feb.

8

17-CV-00939-AJB-BLM

27, 2017). Additionally, the *ACA International* decision will not address claims brought under the Rosenthal Act, a cause of action Plaintiff also brings here, and a claim which the Court finds survives Defendant's motion to dismiss. *See Hiemstra v. Credit One Bank*, No. 2:16-CV-02437-JAM-EFB, 2017 WL 4124233, at *3 (E.D. Cal. Sept. 15, 2017) ("Plaintiff's prerecorded-voice basis for her TCPA claim and her Rosenthal Act claim will remain, no matter the result in *ACA International*."). Therefore, the ruling from the D.C. Circuit will not render Plaintiff's claims completely moot, and the Court will have to proceed with the case irrespective of whether the *ACA International* matter bodes well for Defendant.

Second, a stay would not result in the simplification of issues and questions of law given the more than likely lack of finality in any decision rendered by the D.C. Circuit in *ACA International*. Defendant maintains that a stay is necessary because it would avoid the potential for inconsistent rulings on the scope of the TCPA. (Doc. No. 12-1 at 7.) However, while Defendant correctly asserts that briefing and oral arguments in the appeal are now complete, "[i]t is far from guaranteed that a final result in *ACA International* is imminently forthcoming." *Glick*, 2017 WL 786293, at *2 (emphasis added). In fact, courts in the Ninth Circuit have recently rejected Defendant's argument on the basis that whatever the outcome, appeal is likely and will further delay proceedings until a final determination is made by the United States Supreme Court. *See id.*; *Cabiness v. Educ. Fin. Solutions, LLC*, No. 16-CV-1109-JST, 2017 WL 167678, at *3 (N.D. Cal. Jan 17, 2017); *Lathrop*, 2016 WL 97511, at *4 ("[T]he D.C. Circuit is unlikely to be the final step in the litigation . . . Whichever party is unsuccessful in that court is almost certain to appeal to the Supreme Court. Thus, even the most optimistic estimate of the time required for a decision from the D.C. Circuit significantly understates both the delay a stay might engender and the concomitant prejudice to Plaintiff."). As presently considered, while a final decision from the D.C. Circuit may be imminent, the final resolution on the scope of the 2015 FCC Order is not. Thus, a stay pending *ACA International* would be of indefinite duration. In sum,

Defendant has not shown a stay would serve judicial efficiency, and therefore, this factor does not weigh in favor of Defendant.

### iii. A Stay Would Very Likely Prejudice Plaintiff

Lastly, the Court will inquire into whether there is "a fair possibility that [a] stay . . . will work damage" to the non-moving party. *Landis*, 299 U.S. at 254–55. Defendant maintains that Plaintiff will not suffer prejudice as a result of a stay of the proceedings because the case is in its early stages, and Plaintiff is not still suffering any continuing harm from receiving unsolicited cellphone calls. (Doc. No. 12-1 at 11.) Plaintiff responds that a stay will disadvantage him by postponing discovery for an indefinite period of time, and cause the possibility that relevant evidence will be lost. (Doc. No. 17 at 9.)

Here, the Court concurs with Plaintiff that a stay would result in the potential of prejudice to Plaintiff in delaying discovery. As stated above, while oral arguments in the D.C. Circuit have been completed, and the parties postulate a ruling is forthcoming, a stay may result in uncertainty for an indefinite period if the matter is appealed to the Supreme Court of the United States. Thus, to require Plaintiff to remain in this indeterminate state of limbo is especially inequitable given that much of the relevant evidence Plaintiff will be interested in, such as call logs and dialer information, will be in the hands of third-parties and subject to unknown data retention policies. Therefore, the grant of a stay may cause Plaintiff to lose evidence currently in the dominion and control of others not joined in this suit. *See Cabiness*, 2017 WL 167678, at *3 ("[P]assage of time will . . . increase the likelihood that relevant evidence will dissipate."); *see also Glick*, 2017 WL 786293, at *2 (same). Because the Court concludes a delay of proceedings will likely prejudice Plaintiff, this factor weighs against granting Defendant's motion to stay.

In conclusion, Defendant has failed to prove that a balance of the three factors relevant to whether a stay should be granted weighs in favor of Defendant. First, Defendant has not sufficiently demonstrated hardship or inequity. Second, Defendant has not shown that a stay would be judicially efficient. Lastly, Defendant has failed to prove that Plaintiff will not suffer prejudice if a delay is permitted.

Accordingly, the Court **DENIES** Defendant's motion to stay proceedings.

### III. Motion to Dismiss

#### a. Plaintiff has Article III Standing

Before turning to the merits of Defendant's motion, the Court will first address whether Plaintiff has standing under Article III of the United States Constitution. Defendant contends Plaintiff lacks standing to bring this suit because Plaintiff has not adequately pled a "concrete and particularized" injury caused by Defendant's alleged phone calls. (Doc. No. 26-1 at 14–16.) Plaintiff disagrees, averring a statutory violation of the TCPA is sufficient to prove a concrete injury, and to hold otherwise would result in an impossibility for TCPA plaintiffs to allege a private right of action. (Doc. No. 28 at 15–17.) The Court agrees with Plaintiff that he has the requisite standing to bring this suit.

Article III of the United States Constitution limits federal judicial power to "Cases" and "Controversies," and standing to sue "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To satisfy Article III standing, "[t]he plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (applying the traditional standing test from *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff establishes injury-in-fact, if he or she suffered "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (internal quotation marks omitted).

In some circumstances, the requirement of concreteness and particularity is satisfied when a statutory violation also reflects a real risk of harm. In *Spokeo*, the United States Supreme Court's focal point was the injury-in-fact element. The Court stated, "[i]njury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo*, 136 S. Ct. at 1547–48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). Therefore, Article III standing requires a concrete injury even

in the context of a statutory violation. *See id*. at 1549. However, the Court went on to state that a "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury-in-fact . . . [and] a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.*; *see Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing . . . .") (internal quotation marks omitted). Therefore, in some circumstances, the requirement of concreteness may be satisfied in cases where a statutory violation presents "the risk of real harm[.]" *Spokeo*, 136 S. Ct. at 1549.

Congress enacted the TCPA in response to an increasing number of consumer complaints arising from the increased number of unsolicited calls which were a "nuisance and an invasion of privacy." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). Thus, the TCPA was intended to provide a private right of action to individuals seeking to enjoin or recover damages for violations of the statute. *See* 47 U.S.C. § 227(b)(3). Courts have accordingly held that a violation of the TCPA presents a "risk of real harm" to consumers as each unconsented call or text message can result in a nuisance and an invasion of privacy—harms that Congress sought to eradicate with the TCPA. *See Spokeo*, 136 S. Ct. at 1549; *see also Cabiness*, 2016 WL 5791411, at *6 ("[A] statutory violation of § 227(b)(1)(A)(iii) of the TCPA inherently presents a 'risk of real harm,' even if that harm is 'difficult to prove or measure,' such that the statutory violation is sufficient on its own to constitute an injury-in-fact."). Accordingly, a plaintiff alleging a violation of the TCPA "need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549.

Here, Plaintiff contends "the unrelenting, repetitive calls" from Defendant disrupted his daily activities and the peaceful enjoyment of his personal and professional life, including the ability to use his phone. (Doc. No. 18 ¶ 40.) These allegations sufficiently allege a concrete injury-in-fact. Accordingly, the Court concludes that Plaintiff has standing to bring his claims.

### b. Statutes of Limitations

Because Plaintiff has the proper standing to bring forth this suit, the Court turns next to the issue of whether Plaintiff's claims for negligence, and violations of the TCPA and Rosenthal Act are timely.

#### i. *American Pipe* Tolling of the Statute of Limitations

Plaintiff first asserts that all statute of limitations in this matter were tolled by virtue of the commencement of the *Snyder* class action based on similar allegations filed against Defendant in the Northern District of Illinois. (Doc. No. 18 ¶ 8.) Defendant advances, on the other hand, that filing a class action in federal court tolls the applicable statute of limitations only for federal claims asserted on behalf of the putative class until the court grants or denies class certification. (Doc. No. 26-1 at 8.) The Court agrees with Defendant and holds that the filing of the *Snyder* class action against it only tolled the statute of limitation with respect to Plaintiff's TCPA claims under federal law, and did not operate to toll Plaintiff's California law claims for negligence and violations of the Rosenthal Act.

Plaintiff invokes the principles propounded in *American Pipe* to argue that his applicable statutes of limitations for all his claims were tolled by a class action suit where he was a putative class member. (Doc. No. 28 at 10–12.) Under *American Pipe*, individual claims are tolled during the pendency of a class action suit until class certification is either denied or the individual ceases to be a class member. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 538–39 (1974). However, the rule of *American Pipe* allows tolling within the federal court system in federal question class actions only. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008). In other words, the *American Pipe* rule is not binding on state law claims, which are governed by separate state law statutes of limitations and state law tolling principles. *See id.*; *see also Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011) ("A federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations."). The issue of whether a state statute of limitations would be tolled by a federal class action then becomes a question of state law. *See Chardon v. Fumero Soto*, 462 U.S. 650, 661 (1983).

Therefore, the pertinent question for this Court to resolve is whether the California Supreme Court would apply the doctrine of *American Pipe* to toll Plaintiff's claims. *See Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d 1009, 1017 (C.D. Cal. 2011). The answer is California law has not recognized the principle of cross-jurisdictional tolling. *See Clemens*, 534 F.3d at 1025 (concluding that "California's interest in managing its own judicial system counsel[s] us not to import the doctrine of cross-jurisdictional tolling, into California law."); *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1187 (9th Cir. 2009) (acknowledging that *Clemens* would foreclose the possibility of the application of *American Pipe* because California law does not recognize cross-jurisdictional tolling). Here, while *American Pipe* would admittedly toll the statute of limitations for Plaintiff's federal TCPA claims, because California does not recognize cross-jurisdictional tolling, this Court has no authority to apply *American Pipe* to Plaintiff's state law claims of negligence and violations of the Rosenthal Act. To hold otherwise would be to infringe on California's interest in managing its own judicial affairs and setting time limits under its own statutes of limitations.

Accordingly, this Court holds that Plaintiff's state law claims under the Rosenthal Act and common-law negligence were not tolled under *American Pipe*.

### ii. Statutes of Limitations for the State Law Claims

The Court now addresses whether Plaintiff's state law claims are nevertheless timely under their respective statute of limitations.

First, with regards to Plaintiff's negligence claim, California's statute of limitations for negligence is two years from the date of the alleged injury. *See* CAL. CIV. PROC. § 335.1; *see also Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1407 (9th Cir. 1994). Here, Plaintiff's allegations relate to calls that occurred from December 17, 2013 through June 18, 2016. (Doc. No. 18 ¶ 24.) Thus, the Court agrees with Plaintiff that because Plaintiff filed this instant action on May 8, 2017, any injuries that occurred after May 8, 2015, would seemingly fall within the statute of limitations. In the same vein, any injuries incurred before May 8, 2015, would therefore be outside the statute of limitations period.

Second, as for Plaintiff's claim under the Rosenthal Act, the applicable statute of limitations provides a plaintiff a year from an alleged violation to bring suit against a defendant. *See* CAL. CIV. PROC. § 1788.30(f). Thus, similar to the foregoing analysis, any alleged Rosenthal Act violations before May 8, 2016, would then fall outside the statute of limitations. However, in efforts to save these claims, Plaintiff urges the Court to adopt the "continuing violation doctrine." (Doc. No. 28 at 9.) Under this doctrine, violations falling outside the statute of limitations should be treated as indivisible from the violations within the limitations period because the Defendant's violation allegedly constituted a "continuing pattern." (*Id*.) The Court finds the application of the doctrine suitable to this case.

Both California and federal courts have recognized the use of the "continuing violation doctrine" in the context of Rosenthal Act claims. *See Komarova v. Nat. Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 343 (2009) (holding violations that occurred during the continuing course of conduct of making harassing phone calls were not barred by the statute of limitations). For example, in *Joseph v. J.J. Mac Intyre Companies, L.L.C.*, the court applied the continuing violation doctrine to Rosenthal Act violations outside the statute of limitations period to conduct such as "repeated harassing phone calls" and "a phone call at midnight" to collect a consumer debt. *Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003). The court stated that to determine whether actions form a continuing violation, the key is to ascertain whether the conduct complained of constituted a "continuing pattern and course of conduct as opposed to unrelated discrete acts. If there is a pattern, then the suit is timely if 'the action is filed within one year of the most recent [violation]' . . . and the entire course of conduct is at issue." *Id.*

Here, because the calls made to Plaintiff allegedly spanned from the years 2013 to 2016, and Defendant's conduct in placing each separate call to Plaintiff was related to the same objective of debt collection, Defendant's behavior was sufficiently continuous to invoke the continuing violation doctrine. *See id*. at 1161–62 (finding a pattern of over 200 calls made to Plaintiff over a nineteen-month period to collect a debt as sufficiently

15

continuous to apply the continuing violation doctrine). Therefore, because Plaintiff's claim was filed within a year of June 18, 2016, the most recent Rosenthal violation, the entire course of Defendant's conduct at issue is properly within the limitations period.

Accordingly, Plaintiff's negligence and Rosenthal Act claims discussed above in more detail are timely under their respective statutes of limitations.

### c. Plaintiff's Rosenthal Act Claim Survives Defendant's Motion to Dismiss

Finally, the Court will address the substance of Defendant's motion to dismiss Plaintiff's claims. Plaintiff's first cause of action alleges a violation of the Rosenthal Act. To establish a violation of the Rosenthal Act, Plaintiff must allege: (1) he was a consumer (2) who was the object of a collection activity arising from a consumer debt, and (3) the defendant is a debt collector, (4) who engaged in an act or omission prohibited by the Rosenthal Act. *See Lazo v. Summit Mgmt. Co., LLC*, No. 1:13-CV-02015-AWI-JLT, 2014 WL 3362289, at *16 (E.D. Cal. July 9, 2014). Section 1788.11 of the Rosenthal Act prohibits a debt collector from "[c]ausing a telephone to ring repeatedly or continuously to annoy the person called" or "[c]ommunicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute an [sic] harassment to the debtor under the circumstances." CAL. CIV. PROC. § 1788.11(d)-(e).

Courts require factual particularity regarding the dates and contents of alleged communications for Rosenthal Act claims. *See Lopez v. Prof'l Collection Consultants*, No. CV 11– 3214 PSG (PLAx), 2011 WL 4964886, at *2 (C.D. Cal. Oct. 19, 2011) (holding that to survive a motion to dismiss, a [Rosenthal Act] plaintiff should allege specific dates of contact by the defendant or at the very least, ranges of dates); *see also Bernardi v. Deutsche Bank Nat'l Trust Co. Am.*, No. C–11–05453 RMW, 2013 WL 163285, at *2 (N.D. Cal. Jan. 15, 2013) (dismissing the plaintiffs' [Rosenthal Act] claims because they did not identify any specific dates, statements, or the time period of the defendants' conduct). Further, a plaintiff must allege more than a "high volume of phone calls" to state a claim under the Rosenthal Act. *Fullmer v. JP Morgan Chase Bank, N.A.*, No. 2:09-cv-1037 JFM, 2010 WL 95206, at *7 (E.D. Cal. Jan. 6, 2010).

Here, Plaintiff has adequately pled his Rosenthal Act claim. Plaintiff's FAC does more than merely state that he received calls from Defendant. Plaintiff alleges that he has received at least 234 calls from Defendant on Plaintiff's cellular telephone. (Doc. No. 18 ¶ 28.) Plaintiff also specifies that he received at least ten calls for three days straight in June 2015. (*See id.* ¶ 29.) Although Plaintiff does not provide specific dates, he does provide a range of dates—between December 17, 2013 through June 18, 2016. (*See id.* ¶ 24.) With regard to the calls, Plaintiff alleges he answered several of the above mentioned autodialed telephone calls from Defendant and asked Defendant to stop calling. (*See id.* ¶¶ 26, 27, 31, 35.) Thus, as Plaintiff has specified both the period over which the calls occurred, and the harassing nature of the calls, the Court holds that these allegations are sufficient to state a claim under the Rosenthal Act. *See Crockett v. Rash Curtis & Assocs.*, 929 F. Supp. 2d 1030, 1032 (N.D. Cal. 2013) ("No bright-line rule guides courts in determining which conduct fails to establish harassment as a matter of law, but courts have found call volumes similar to the 22 at issue here to state a claim for relief. . . .").

Accordingly, Defendant's motion to dismiss Plaintiff's first cause of action under the Rosenthal Act is **DENIED**.

### d. Plaintiff's TCPA Claim Survives Defendant's Motion to Dismiss

The Court next addresses Plaintiff's TCPA cause of action. To properly plead a TCPA claim for calls made to a cellular phone, a plaintiff must plead the following three elements: "(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). An ATDS is defined as equipment that "has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). In Plaintiff's FAC, Plaintiff has adequately alleged the first and third elements, namely that Defendant called Plaintiff's cellular telephone and that Plaintiff revoked any prior express consent. (Doc. No. 18 ¶¶ 24, 30, 31.)

As for the second element, although Plaintiff's allegation that Defendant called Plaintiff on his cellular telephone number via an "'automatic telephone' dialing system . . . using an 'artificial or prerecorded voice'" seems conclusory on its own, courts have found similarly phrased allegations sufficient to state a claim for relief. (Doc. No. 18 ¶ 24); *see e.g.*, *Robinson v. Midland Funding, LLC*, No. 10CV2261 MMA AJB, 2011 WL 1434919, at *3 (S.D. Cal. Apr. 13, 2011) (finding that a debtor stated a claim by alleging that calls were made "via an [ATDS] ... using 'an artificial or prerecorded voice' for which he was charged"); *Reyes v. Saxon Mortg. Serv., Inc.*, No. 09cv1366-DMS-WMC, 2009 WL 3738177, at *4 (S.D. Cal. Nov. 5, 2009) (holding that "frequently made calls to Plaintiff's cell phone using an [ATDS] . . . and an artificial or prerecorded voice," of which the plaintiff bore the expense was a properly pled claim that an ATDS was used). Therefore, Plaintiff has adequately pled a claim under the TCPA and Defendant's motion to dismiss this cause of action is **DENIED**.

### e. Plaintiff's Negligence Claim Is Dismissed

As for Plaintiff's negligence claim, Defendant first argues that the TCPA does not provide a duty of care sufficient to maintain a negligence cause of action. (Doc. No. 26-1 at 11.) Plaintiff, however, counters that Defendant owed a duty of reasonable care, and debt collection practices must not exceed the bounds of reasonableness. (Doc. No. 28 at 13.) The Court agrees with Defendants.

Under California law, the elements for a negligence claim are "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach is the proximate or legal cause of the resulting injury." *Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917 (1996). As a general rule, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Sepehry-Fard v. Dep't Stores Nat'l Bank*, No. 13-CV-03131-WHO, 2013 WL 6574774, at *2 (N.D. Cal. Dec. 13, 2013). Therefore, "[l]iability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Id.* (citation

omitted). Courts have also extended this rule to loan servicers. *See, e.g.*, *Saugstad v. Am. Home Mortg. Servicing Inc.*, No. 2:09–CV–03516 JAM KJM, 2010 WL 2991724, at *4 (E.D. Cal. July 29, 2010).

Further, in the context of negligence suits, debt collectors do not owe a duty of care to debtors in the collection of consumer debts. In *Inzerillo v. Green Tree Servicing, LLC*, the defendant debt collector called plaintiff debtor at least six times a day and at all hours, called her parents numerous times, and threatened to change the locks on her house and foreclose on her property. *See Inzerillo v. Green Tree Servicing, LLC*, No. 13-cv-6010-MEJ, 2014 WL 1347175, at *1 (N.D. Cal. Apr. 3, 2014). The court held that the defendant owed no legal duty of care in the collection of consumer debts. *See id.* at *6. The court reasoned the facts merely showed that the defendant "acted as a loan servicer seeking to collect on a debt." *Id.* Therefore, the court concluded the plaintiffs "failed to allege the type of duty California courts would find sufficient to state a claim for negligence." *Id.*

Here, Plaintiff's claim for negligence fails because Defendant does not owe Plaintiff a duty of care in collecting from Plaintiff financial obligations related to a mortgage for Plaintiff's primary residence. The crux of Plaintiff's negligence cause of action is Defendant "had a duty to use care to not infringe on consumers' privacy rights when collecting on alleged debts and not calling Plaintiffs hundreds and/or thousands of times to harass and/or abuse Plaintiffs." (Doc. No. 18 ¶ 65.) However, Defendant simply does not owe such a duty as a loan servicer engaged in the routine collection of debts. *See McCarty v. GCP Mgmt., LLC*, Civ. No. 10–00133-JMS–KSC, 2010 WL 4812763, *6 (D. Haw. Nov. 17, 2010) ("[L]enders generally owe no duty of care sounding in negligence to their borrowers.").

Accordingly, Plaintiff's fourth cause of action for negligence is **DISMISSED WITH LEAVE TO AMEND**. Leave to amend is granted solely to address a claim for liability on the basis that lender actively participated in a manner beyond the domain of the usual money lender."

//

### f. Punitive Damages

Lastly, because Plaintiff has requested that punitive damages attach to his cause of action for negligence, and because the Court has accordingly dismissed Plaintiff's negligence claim, the Court concludes that Plaintiff's punitive damages claim cannot survive Defendant's motion to dismiss. (Doc. No. 18 at 11.) Furthermore, Plaintiff's only other remaining state law claim under the Rosenthal Act is not a vehicle for which Plaintiff can plead punitive damages because "[i]it is not disputed that punitive damages are unavailable under the [Rosenthal] Act." *Komarova*, 175 Cal. App. 4th at 341 n.3. Consequently, the Court **DISMISSES** Plaintiff's punitive damages claim.

### CONCLUSION

For the reasons set forth above, Defendant's motion to stay is **DENIED**. Additionally, Plaintiff's negligence and punitive damages claims are **DISMISSED WITH LEAVE TO AMEND**. However, as Plaintiff has sufficiently pled a claim under both the TCPA and Rosenthal Act, Defendant's motion to dismiss these claims is **DENIED**. Therefore, Defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff may file a second amended complaint curing the deficiencies noted herein within **fourteen (14) days** of this order's issuance.

**IT IS SO ORDERED.**

Dated: October 18, 2017

Hon. Anthony J. Battaglia
United States District Judge